## STILLING vs. THE TOWN OF THORP.

*February 14 — March 14, 1882.*

COUNTIES: HIGHWAYS. *(1) When county liable for condition of highway.*
EVIDENCE. *(2) Reading medical books to jury.*
INSTRUCTIONS TO JURY: *(3) Must be considered with reference to facts in evidence.*
REVERSAL OF JUDGMENT: *(4) For admission of improper evidence.*

1. Under our statute (sec. 1339, R. S.), a town is relieved from liability, and the county is liable, for damage caused by the defective condition of a highway, only where such highway has been "adopted" as part of a county highway, under sec. 1308, R. S., and not in cases where a road has been merely "laid out" by the county board, under secs. 1300–1307.

2. Portions of medical books cannot be read to the jury as evidence, although such books have been shown by expert testimony to be "standard works in the medical profession."

3. The question whether there was error in giving or refusing certain instructions, must be determined by a consideration of the facts in evidence to which they related, and not merely of their accuracy as abstract propositions of law. And where the bridge whose defective condition is alleged to have caused an injury complained of, was only twelve feet wide, and sloped southward so as to be four inches lower on the south than on the north side, and the ice was much thicker and rougher on the northern than on the southern side, there was no error in refusing to charge that "the mere slippery condition of the bridge, arising from the

Stilling vs. The Town of Thorp.

ordinary action of the elements (as ice and snow) is not such a defect as would render the town liable," or in charging that, if the ice rendered the highway insufficient, the town was bound to restore it to a reasonably safe condition within a reasonable time.

4. A judgment will not be reversed for the improper admission of evidence, which, in view of the other evidence in the case, could not have affected the verdict.

APPEAL from the Circuit Court for *Clark* County.

Action for injuries to the plaintiff's person, and to his team, wagon, etc., which injuries are alleged to have occurred on the 17th of January, 1880, from the insufficiency or want of repair of a certain bridge in the defendant town, on the road between Chippewa Falls and Colby, alleged to have been laid out, established and opened in pursuance of ch. 159, Laws of 1879. Plaintiff had a verdict for $2,500; and from a judgment thereon the defendant town appealed.

*R. J. MacBride* and *James O'Neill*, for the appellant:

1. The court erred in excluding the testimony offered to prove that the highway in question was a county highway. The board of supervisors could proceed to adopt a road as a county road under secs. 1300–1309, R. S. The petition asked that the board establish a county road, and the record states that the petition was granted. The petitioners did not ask that a new road be laid out, for the petition states that it is " the only road all passable through the county," etc. They evidently intended to proceed under sec. 1308, R. S., and to ask the board to adopt this " main traveled highway." The word " establish," in this connection, is synonymous with the word " adopt." And it was not necessary that a formal order should have been drawn up and adopted by the board. The record by the clerk in the proceedings at a regular meeting is sufficient. If the board adopted or established the highway as a county road, the county and not the town is liable for its insufficiency. R. S., sec. 1339; *Jensen v. Supervisors*, 47 Wis., 303. And see *Hark v. Gladwell*, 49 Wis., 172. 2. The court erred in not permitting counsel to read from medical books

proved to be standard works. *Luning v. State*, 2 Pin., 215; *City of Ripon v. Bittel*, 30 Wis., 614; *State v. Hoyt*, 46 Conn., 330. 3. The court erred in those portions of the charge relating to the icy condition of the road. The mere fact that a highway is slippery from ice upon it, if there is nothing in the construction or shape of the way which occasioned any special liability to formation or accumulation of ice, is not a defect within the meaning of the statute. *Stanton v. Springfield*, 12 Allen, 566; *Stone v. Hubbardston*, 100 Mass., 49; *Hutchins v. Boston*, 12 Allen, 571; *Cook v. Milwaukee*, 24 Wis., 270; *Perkins v. Fond du Lac*, 34 id., 435; *Quincy v. Barker*, 81 Ill., 300; 2 Thompson on Neg., 784; *Smyth v. Bangor*, 72 Me., 249. 4. The evidence that plaintiff had a family entirely dependent on him for support was inadmissible. It could have been offered for no other purpose than to enhance the damages. *Moody v. Osgood*, 50 Barb., 628; *Barbour Co. v. Horn*, 48 Ala., 566; *Pitts., Ft. W. & C. Railway Co. v. Powers*, 74 Ill., 341; *Chicago v. O'Brennan*, 65 id., 160; *Macon & W. Railroad Co. v. Winn*, 26 Ga., 259; *Chicago & N. W. Railway Co. v. Bayfield*, 37 Mich., 205; 21 Wis., 372; 38 id., 613. 5. The statements made after the accident by the chairman of the town should have been excluded. The defendant is not bound by his admissions not made while in the performance of any official duty. *Cortland Co. v. Herkimer Co.*, 44 N. Y., 22; *Glidden v. Unity*, 33 N. H., 571; *Town of Wheelock v. Town of Hardwick*, 48 Vt., 19; *Trustees of Baptist Church v. Ins. Co.*, 28 N. Y., 153; *Hazleton v. Union Bank*, 32 Wis., 48; *Mil. & Miss. R. R. Co. v. Finney*, 10 id., 388; 72 Me., 249.

For the respondent there was a brief by *H. H. Hayden* and *W. P. Bartlett*, and oral argument by *Mr. Hayden*.

CASSODAY, J. It is urged that the bridge or road, at the time and place of the injury, was a county highway, adopted as such, and that the county of Clark, and not the defendant, was bound to keep it in repair.

The defendant offered in evidence a petition purporting to be signed by forty-seven freeholders and residents of the towns of Thorp and Hixon, in Clark county, to the board of supervisors of that county, "*to establish a county road*" on a line designated, commencing at a point at the west line of Clark county and running east and including the line of road in question, which is described as "the only road that is all passable through this (Clark) county; the streams are all bridged on said route, and chopped through, with the exception of three miles in town 28, range 3. We petition said board *to lay out said road* for the benefit of the inhabitants of said towns. As herein mentioned, it is, from beginning to ending, sixteen miles of road." They also offered in evidence an amendment to the petition, which related to the three miles mentioned in the petition as not being chopped through (and which were a little east of the place of the injury), and provided for going a mile south, and then east, instead of going directly east, as mentioned in the petition. In connection with this offer they also offered in evidence the minutes of the meeting and proceedings of the county board of supervisors of Clark county, held November 16, 1878, showing that upon motion the petition with the amendment was granted. These offers were excluded.

The defendant also offered to show by such records that November 15, 1879, the board levied a county road tax, and directed $300 to be expended in the town of Thorp, and that November 13, 1880, the board levied a county road tax, and directed $600 to be expended in the town of Thorp, and that commissioners were appointed to apply such appropriations; which offers were rejected. Did these offers tend to exonerate the town from liability, and fix the same upon the county? Undoubtedly the county boards of supervisors have authority "to lay out highways" in the manner and under the circumstances stated in sections 1300–7, R. S. So the county board may "adopt any main traveled highways, or parts of such

highways, as county roads, and shall thereafter cause the same to be kept in good repair so long as they remain under their control." Section 1308, R. S. So the county may "designate any such highways, or parts of such highways, for the purpose of expending money in their repair, without adopting them as county roads, or assuming any responsibility for any injury caused by any insufficiency or want of repair therein, unless caused by the neglect of their officers." Section 1308, R. S.

It has often been held that no action lies at common law against a town for damages sustained through the defect of the highways in such town. *Mower v. Leicester,* 9 Mass., 247; *Sawyer v. Northfield,* 7 Cush., 494; *Holman v. Townsend,* 13 Met., 297; *Barry v. Lowell,* 8 Allen, 127; *Oliver v. Worcester,* 102 Mass., 499; *Town of Waltham v. Kemper,* 55 Ill., 346; *Bussell v. Steuben,* 57 Ill., 35; *Eastman v. Meredith,* 36 N. H., 284. On the same theory, it has often been held that a county is not liable at common law for a defect in a public highway of the county. *Huffman v. San Joaquin Co.,* 21 Cal., 246; *Sherbourne v. Yuba Co.,* 21 Cal., 113; *Crowell v. Sonoma Co.,* 25 Cal., 313; *Freeholders of Sussex Co. v. Strader,* 18 N. J. L., 108; *Cooley v. The C. F. of Essex,* 27 N. J. L., 415; *Commissioners v. Mighels,* 7 Ohio St., 109; *Scales v. O. of Chattahoochee Co.,* 41 Ga., 225; *Brabham v. Supervisors,* 54 Miss., 363; *Woods v. Colfax,* 15 West. Jur., 165, and note.

The statute requires that highways laid out by county boards shall be opened and repaired in the respective towns in the same manner as other highways. Section 1307, R. S. The statute also requires that all state roads shall be opened and worked as other highways by the several towns in which the same are or may be located. Section 1316, R. S.; *Jensen v. Supr's Polk Co.,* 47 Wis., 298. The statute making any town, city or village liable for any damage happening by reason of the insufficiency or want of repairs of any bridge, etc., in such town, city or village, does not limit such liability to town roads, nor to any particular class of roads, except that it pro-

vides that if such defect is in a "bridge, sluice-way or road which any county shall have *adopted* as a county road, and is by law bound to keep in repair, such county shall be liable therefor, and the claim for damages shall be against the county." Section 1339, R. S. This exception is in strict harmony with the provision of section 1308, R. S., above referred to, which requires the county board to keep in good repair such "*main traveled* highways or parts of *such* highways" as they "may adopt" as county roads, so long as they remain under their control. From these statutory provisions it is very evident that counties are not liable for damages by reason of the insufficiency of any bridge, sluice-way or road, except in the single case of a main traveled highway, or parts of such highway, which the county board "have *adopted* as a county road."

The simple question therefore is, whether the rejected evidence shows that the highway in question had been "adopted" by the county board as a county road. Such adoption, under the statute, seems not only to be confined to "traveled highways or parts of such highways," but to "main" traveled highways. It would seem to have no reference to such roads as are laid out and established by the county board in the first instance. It would seem that the rejected evidence did not tend to show that the county board had adopted the road in question as a county road, much less that it was a "main traveled highway." On the contrary, the petition, by its terms, giving it the most liberal construction, is nothing but an "application" to "lay out" and to "establish" a county road. *Hark v. Gladwell*, 49 Wis., 172. Whether it was ever in fact laid out and established as a county road, or as a state road, does not appear, nor was it material, since in neither event would the town be relieved of its statutory liability. So far from the road being a "main traveled road," subject to adoption by the county, the defendant gave evidence tending to show that "this road was merely a trail cut through the

woods so that wagons could get through, and it had got cut up so bad that there were trees across it; that they had to go around through the woods, where teamsters had cut their own road at the time of the accident. It was about three miles west of the bridge before you reached the turnpike, and about 10½ miles east before you reached the turnpike. For the three miles west of the bridge it was cut out merely wide enough for a wagon to go through." For the reasons given, there was no error in refusing to instruct the jury that the town was not liable by reason of the adoption of the road by the county.

The defendant examined a medical witness, and, after proving by him that certain medical books shown him were standard works in his profession, offered to read extracts from them to the jury as evidence; but the offer was rejected, and the ruling is assigned as error.

In *Luning v. State*, 2 Pin., 215, it was held to be discretionary with the trial judge whether or not counsel shall be allowed in his *argument* to read to the jury medical or scientific works. See *Wade v. De Witt*, 20 Tex., 400; *Legg v. Drake*, 1 Ohio St., 286.

In *Ripon v. Bittel*, 30 Wis., 619, the court felt bound, under the peculiar condition of the record, to assume, in order to sustain the judgment, that the medical books had been admitted for the purpose of impeaching the evidence of a medical expert, who had given certain testimony as to their contents. To the same effect is *Conn. Mut. Life Ins. Co. v. Ellis*, 89 Ill., 516. The inference from the opinion is, that they would not have been admissible as evidence for any other purpose. The precise question here presented is, whether a party can give in evidence extracts from standard medical works referred to by his own expert witness, for the purpose of corroborating such expert, and of increasing the weight to be given to his testimony.

In *State v. Hoyt*, 46 Conn., 337, the trial court refused to allow such extracts to be read by counsel as a part of his argu-

ment, and, upon error being assigned, the cause was for that reason reversed by three of the five judges of the supreme court of that state. The opinion of the court, however, cites but one case in support of the decision, and that from the same state. Two of the judges dissented, and, in support of their opinion, cited English, Massachusetts, Indiana, Texas and Wisconsin cases.

In *Ashworth v. Kittridge*, 12 Cush., 193, it was held that "medical books, even of received authority, are not competent evidence, if objected to by the adverse party." The reason given, in the terse opinion of Chief Justice SHAW, is that the written statements contained in such extracts are "wanting the sanction of an oath," and are "made by one not present, and not liable to cross examination." See *Com. v. Wilson*, 1 Gray, 338.

In *Com. v. Sturtivant*, 117 Mass., 123, it was held that "books on medical jurisprudence cannot be read by a witness to the jury, although the witness is an expert, and concurs in the views therein expressed." The only difference between that case and this is, that here the counsel proposed to read the extracts, instead of the witness. These cases are in harmony with our own judgment, as well as with the former decisions of this court on the subject. See discussions in 24 Alb. Law J., 266, 284; Wharton on Ev., §§ 665–6; 1 Greenl., § 440, and note.

Among other things the court charged the jury: "It is also alleged that the bridge was insufficient by reason of the fact that ice had accumulated upon it, which rendered it unsafe and dangerous. The fact alone that there may have been ice upon the bridge, which made it unsafe and dangerous, is not negligence. If the highway and bridge, at and near that point, was properly constructed and reasonably sufficient and safe before the ice came upon it, the town is not liable, unless it is negligent in restoring the highway to a reasonably sufficient and safe condition; [but it is incumbent upon the town to restore

it to a reasonably sufficient and safe condition within a reasonable time], as soon as it can reasonably be done; so that, if the road was reasonably sufficient and safe before the ice came upon it, and the officers had not had a reasonable time to learn of the condition of the road and restore it, then the defendant would not be liable for plaintiff's injuries by reason of ice. [But, on the other hand, if the ice rendered the highway insufficient, and a reasonable time had elapsed in which the condition of the road should become known to the defendant's officers, and in which they might have repaired it, and that defect caused the plaintiff's injuries, then the defendant is liable."] The portions in brackets were excepted to.

The court was then asked to give the following instruction, which was refused: "The mere slippery condition of the highway and bridge arising from the ordinary action of the elements (as ice and snow) is not such a defect as would render the town liable; and if the jury should find in the case, under all the evidence, that the injuries of the plaintiff were occasioned solely by the highway and bridge being in such slippery condition, then the jury must find for the defendant in this case, even though they should also find that the plaintiff was in the exercise of ordinary care and prudence."

In passing upon the alleged errors in this portion of the charge, and in the refusal of this instruction, we are to remember that the bridge, off from which the plaintiff's wagon slid and turned over, was eighteen to twenty feet long, and only twelve feet wide, and that the surface of the bridge sloped to the south, so that the surface of its southern side was from four to twelve inches lower than the surface at the northern side. The bridge was about two feet out of line with the road at each end, and the ice on the surface of the bridge was much thicker and rougher on the northern side than on the southern side.

In charging the jury, the court was bound to keep in view these admitted facts and the evidence in the case. The jury

Stilling vs. The Town of Thorp.

were not to be instructed upon law in the abstract, but only as to the law applicable to the admitted facts and the evidence of the respective parties. The court was not, therefore, bound to submit to the jury the effect of mere slipperiness from the ordinary action of the elements — as ice and snow — in a bridge properly. constructed and having a level surface; but only to give such instructions as should be requested, as to the law applicable to that bridge in its then present condition, as revealed by the evidence of the respective parties.. The undisputed evidence, therefore, clearly shows that there could be no such thing as "mere" slipperiness from the "ordinary" action of the elements, but necessarily must be *such* slipperiness as would be created by the elements (as ice, snow, heat and cold) upon a bridge with a sloping surface, as that had, and constructed as that was. So, when the court told the jury that "if the ice rendered the highway insufficient, and a reasonable time had elapsed in which the condition of the road should become known to the defendant's officers," etc., it evidently refers to that bridge in its then present cendition, and so sloping that if ice was formed on its surface at all, especially if considerably the thickest upon the upper side, it would of necessity be dangerous to a traveler with a wagon. *Prideaux v. Mineral Point*, 43 Wis., 513, No. 3. In this respect *Smyth v. Bangor*, 72 Me., 249, and other cases, are clearly distinguishable. We conclude that the rulings of the court in this regard were not erroneous.

The plaintiff was allowed, without objection, to give this testimony: "At the time of the accident I had a wife and two children ; one is three years old, and the other is one year old. I have no other business besides carpentering and labor. I have no trade of any kind. *Q.* Was your family entirely dependent on you for support ? *A.* Yes, sir." After this evidence was given, the defendant objected, and the judge remarked that he thought the objection came pretty late, but that he did not think the "question" relevant. The defend-

Stilling vs. The Town of Thorp.

ant then moved "to strike out the *answer*," which motion was overruled, and the defendant excepted; and this exception is assigned as error.   The motion to strike out the "answer" clearly relates to the answer, "Yes, sir," and nothing more.   In view of the testimony already given, and to which no objection or motion to strike out was made, the answer, "Yes, sir," became entirely immaterial.   The objectionable testimony, if any, was that which preceded it, in relation to his wife and children, and their age ; and as to this there was no motion to strike out.

Error is assigned because a witness was permitted to state what the chairman of the town said after the injury, indicating that he had knowledge of the condition of the bridge before the injury.   But the chairman of the town had himself testified that he had "passed over the bridge the Sunday before the accident."   The fact of notice having thus been admitted, the testimony complained of was entirely immaterial, and could not have affected the verdict, even if its admission had been error.   For such immaterial error a judgment will not be reversed.   *Hazleton v. Union Bank*, 32 Wis., 36; *Davis v. Town of Fulton*, 52 Wis., 657.

We cannot say that the damages are excessive, and counsel really do not ask a reversal on that ground.   Nor can we say, as a matter of law, that the plaintiff was guilty of contributory negligence.   The case is, in some respects, similar to *Kenworthy v. Ironton*, 41 Wis., 647, in which the verdict for the plaintiff was sustained.   The instruction requested by the defendant, which we have not referred to, was, in our opinion, sufficiently covered by the general charge.

*By the Court.*— The judgment of the circuit court is affirmed.